### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF KENTUCKY
### OWENSBORO DIVISION

**CIVIL ACTION NO. 4:01CV-202-JHM**

**AMERICAN CIVIL LIBERTIES UNION**
**OF KENTUCKY, et al.**                                            **PLAINTIFFS**

**V.**

**GRAYSON COUNTY, KENTUCKY; and**
**GARY LOGSDON, in his official capacity**
**as Grayson County Judge Executive**                             **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court upon cross motions by Plaintiffs, American Civil Liberties Union of Kentucky, Raymond Harper, and Ed Meredith, and Defendants, Grayson County and Gary Logsdon, for summary judgment [DN 45, DN 43]. This case challenges the inclusion of the Ten Commandments in a display entitled "Foundations of American Law and Government Display" located in the Grayson County Courthouse, Leitchfield, Kentucky. The issue before the Court is whether the display violates the Establishment Clause of the First Amendment of the United States Constitution. Fully briefed, this matter is now ripe for decision. For the reasons set forth below, the Court **GRANTS** Plaintiffs' motion for summary judgment and **DENIES** Defendants' motion for summary judgment.

### I. STANDARD OF REVIEW

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a

matter of law.  Fed. R. Civ. P. 56.  The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  Since the parties do not dispute the material facts in this case, summary judgment is an appropriate means of resolving the legal issues underlying this dispute.

## II.  BACKGROUND

On September 18, 2001, a private individual, Reverend Chester Shartzer, requested approval from the Grayson County Fiscal Court to hang a display entitled "Foundations of American Law and Government Display" at the Grayson County Courthouse.  The display is composed of ten frames consisting of nine different documents.  The documents in the frames are the full text of the Mayflower Compact, the full text of the Declaration of Independence, the Ten Commandments, the full text of the Magna Carta, the full text of The Star Spangled Banner, the National Motto together with the Preamble to the Kentucky Constitution, the full text of the Bill of Rights, a picture of Lady Justice together with an explanation of its significance, and an explanation of each of the documents in the display. The explanation of the Ten Commandments reads as follows:

> The Ten Commandments have profoundly influenced the formation of Western legal thought and the formation of our country.  That influence is clearly seen in the Declaration of Independence, which declared that "We hold

these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty, and the pursuit of Happiness." The Ten Commandments provide the moral background of the Declaration of Independence and the foundation of our legal tradition.

(DN 55, Exhibit 3.)  The minutes of the September 18, 2001, Fiscal Court meeting, reflect

that

> Reverend Chester Shartzer addressed the Court concerning his desire for the County to place the Ten Commandments in the County buildings.  He said there were several Counties in the State who has [sic] them in their Courthouses.  He explained that some Counties has [sic] them hanging in a group of other historical documents.  He said he thought the Civil Liberties would look more favorable toward it if they were hanging in a grouping with the other historical documents.  County Attorney, Tom Goff said there had been some hearings concerning this in some of the Eastern Counties of the State.  Judge Logsdon and the Court members expressed the desire to place them in the County buildings and asked the County Attorney if he thought they could do so in a way that would not cause problems for the County.  He explained that there could be law suits filed against the County, and that he wanted to study the results of the hearings from the other Counties, before advising them.

(Minutes, September 18, 2001, Grayson County Fiscal Court Meeting).  After Mr. Shartzer

presented his request to hang the Foundations Display, Magistrate Damon Hornback made

a motion to "place the Ten Commandments in the buildings;" however, the motion failed for

lack of a second.  Immediately after Mr. Hornback's failed motion, Magistrate Sandy Farris

made the motion to post the Foundations Display and Damon Hornback seconded the motion.

The Fiscal Court voted, seven to zero, to approve the Foundations Display after consulting

with the county attorney.  The Fiscal Court ordered that:

> The County place the Ten Commandments in the Court House along with the Historical documents of the Declaration of Independence, Bill of Rights,

> Mayflower Compact, Star Spangled Banner, National Anthem, Magna Carta, Explanation Document, and a County Resolution, after County Attorney Tom Goff has looked at the results of the hearings in other Counties, and if he thinks this can be done without legal action against the County.

(Id.).

On September 28, 2001, at a special session of the Grayson County Fiscal Court, on motion by Magistrate Curtis Wells and seconded by Magistrate Farris, the Fiscal Court voted, six to zero,[1] to affirm the vote from September 18 regarding the display. Specifically, the minutes provide that "it is ordered that: The following resolution along with the Historical Documents and the Ten Commandments be placed in a grouping in the Court House." (Minutes, September 28, 2001, Grayson County Fiscal Court Special Session.) Mr. Logsdon represents that even though the minutes indicate a resolution was passed, there was no accompanying resolution. (Gary Logsdon Aff. at ¶ 8.)

No county or other taxpayer funds were expended in the production, display or maintenance of the display. The entire display was privately funded by Mr. Shartzer. Mr. Shartzer installed the display in the hallway on the second floor of the Courthouse. During the installation of the display no formal ceremony was held, no official statement on behalf of the Fiscal Court was made, and no public prayer offered.

On May 15, 2002, this Court entered a preliminary injunction, ordering the defendants to remove the Ten Commandments from the Foundations Display. On May 27, 2002, Mr. Gary Logsdon, County Judge Executive of Grayson County, requested that Alvie Burns, a

---

[1]Only five magistrates were present at the September 28, 2001, Fiscal Court meeting.

maintenance man, remove the display.  The Ten Commandments document was taken out of the frame, and the empty frame was re-hung on the wall.  Mr. Shartzer took possession of the Ten Commandment document.[2]

At the request of the parties, the Court stayed the case pending appellate resolution of American Civil Liberties Union v. McCreary County, 145 F. Supp. 2d 845 (E.D. Ky. 2001) and American Civil Liberties Union v. Mercer County, 240 F. Supp.2d 623 (E.D. Ky. 2003).  After decisions were issued by the United States Court of Appeals, American Civil Liberties Union v. Mercer County, 432 F.3d 624 (6th Cir. 2005), and the United States Supreme Court, McCreary County v. American Civil Liberties Union, 545 U.S. 844 (2005), the Magistrate Judge lifted the stay of the present case.  The parties have now filed cross-motions for summary judgment.

### III.  DISCUSSION

### A.  Standing

Before the Court can examine the other issues raised by the parties, the Court must address whether the Plaintiffs have standing to bring this suit.  A party may not bring a suit in federal court without standing. Standing is a "core component" of the "case or controversy" requirement of Article III of the United States Constitution. Broadened Horizons Riverkeepers v. United States Army Corps of Engineers, 8 F. Supp. 2d 730, 733 (E.D. Tenn. 1998). The standing doctrine is designed to confine the courts to adjudicating

---

[2]According to Plaintiffs, Judge Logsdon made a statement when the Ten Commandments were removed from the Foundations Display.

actual cases and controversies by ensuring that the "plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." Warth v. Seldin, 422 U.S. 490, 498-499 (1975)(quoting Baker v. Carr, 369 U.S. 186, 204 (1962)).  To establish Article III standing to sue in federal court, an individual plaintiff must establish three elements:

> First, the plaintiff must have suffered an "injury in fact"-an invasion of a legally protected interest which is (a) concrete and particularized ..., and (b) "actual or imminent, not 'conjectural' or 'hypothetical,' ".... Second, there must be a causal connection between the injury and the conduct complained of-and the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.".... Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Broadened Horizons Riverkeepers, 8 F. Supp. 2d at 733 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (citations omitted)).  "[T]he 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured."  Lujan, 504 U.S. at 563. In short, the three constitutional requirements are injury, causation, and redressability.  The party invoking federal jurisdiction bears the burden of establishing that it has standing to pursue the action. FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990).

Defendants submit two arguments in support of their contention that the Plaintiffs do not have standing in this case: (1) the Plaintiffs cannot establish an injury sufficient to confer Article III standing and (2) the Plaintiffs do not have taxpayer standing because of the

6

Supreme Court's decision in <u>Hein v. Freedom From Religion Foundation, Inc.</u>, 127 S.Ct. 2553 (2007).

First, Defendants contend the Plaintiffs cannot establish injury-in-fact because they allege only a psychological injury from viewing something with which they disagree. According to Defendants, Plaintiffs' only allegation of standing is that when using the courthouse they "have occasion" to view the Ten Commandments which is not sufficient to establish an injury-in-fact.   <u>Books v. Elkhart County, Ind.</u>, 401 F.3d 857 (7th Cir. 2005)(Easterbrook, J., dissenting).[3]

The Court disagrees.  Courts have consistently held that in cases involving the public display of a religious object, "'unwelcome direct contact with the object' that causes diminished enjoyment of public facilities confers standing on a plaintiff."  <u>American Civil Liberties Union of Ohio Foundation, Inc. v. Board of Com'rs of Lucas County, Ohio</u>, 444

---

[3]In support of this position, Defendants rely on Judge Easterbrook's dissent in <u>Books v. Elkhart County, Ind.</u>, 401 F.3d 857 (7th Cir. 2005), in which he opines that the plaintiff in <u>Books</u> had no standing to complain about a "Foundations of Law" display which contained the Ten Commandments where the plaintiff merely alleged that he visited the building housing the display once a year and had not changed his conduct since the display was installed.   Judge Easterbrook explained that permitting standing in such a situation was impossible to square with the Supreme Court's precedent in <u>Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.</u>, 454 U.S. 464, 485 (1982), in which the Supreme Court held that "the psychological consequence presumably produced by *observation* of conduct with which one disagrees . . . . is *not* an 'injury in fact' for constitutional purposes.'"  <u>Books</u>, 401 F.3d at 871.

This argument has been rejected by the Sixth Circuit and other circuits.  In <u>American Civil Liberties Union of Ohio Foundation, Inc. v. Ashbrook</u>, 375 F.3d 484 (2004), the Sixth Circuit held that it did "not take the Supreme Court's decision in [<u>Valley Forge</u>] to stand for the proposition that psychological injury can *never* be a sufficient basis for the conferral of Article III standing."  <u>Id.</u> at 489 n. 3; <u>see also</u>  <u>American Civil Liberties Union of Kentucky v. Rowan County, Ky.</u>, 513 F. Supp. 2d 889, 900 n. 7 (E.D. Ky. 2007).  Instead, standing depends "on the directness of the harm alleged."  <u>Ashbrook</u>, 375 F.3d at 489 n. 3.

F. Supp. 2d 805, 809 (N.D. Ohio 2006)(quoting Washegesic v. Bloomingdale Public Schools., 33 F.3d 679, 682 (6th Cir. 1994)); see also  Hawley v. City of Cleveland, 773 F.2d 736, 738-39 (6th Cir. 1985) (representative plaintiff's diminished enjoyment of airport from presence of chapel conferred standing); Books v. City of Elkhart, 235 F.3d 292, 299-301 (7th Cir. 2000) (finding standing where plaintiffs were forced to see a Ten Commandments monument because of a right or duty to enter a municipal building where it was located); American Civil Liberties Union of Tennessee v. Hamilton County, 202 F. Supp. 2d 757, 761-62 (E.D. Tenn.2002) (standing exists where association members must enter a courthouse with a Ten Commandments display because, inter alia, residents must go to the courthouse to renew automobile license tags); Adland v. Russ, 107 F. Supp. 2d 782, 784 (E.D. Ky. 2000), aff'd 307 F.3d 471 (6th Cir.2002) (plaintiff had standing because its members frequently travel to state capitol, which has a Ten Commandments monument on its grounds); American Civil Liberties Union v. Pulaski County, 96 F. Supp. 2d 691, 694 (E.D. Ky. 2000) (plaintiffs had standing because they needed to conduct civic business in a courthouse with a Ten Commandments exhibit).

In the present case, Ed Meredith and Raymond Harper are both Grayson County residents and must conduct civic business in the Grayson County Courthouse.  Both Mr. Harper and Mr. Meredith viewed the Foundations Display prior to the removal of the Ten Commandments.  Both Plaintiffs assert that the Foundations Display has diminished their use and enjoyment of the Grayson County Courthouse.  As a result of this "unwelcome direct contact" with the Foundations Display, the Plaintiffs allege they have suffered a direct injury

8

by their observation of the Ten Commandments in the Courthouse and by the resulting diminishment of their use and enjoyment of the Courthouse. Accordingly, the Court finds that the individual Plaintiffs have standing to challenge the Foundations Display.

Second, Defendants argue that the Plaintiffs lack taxpayer standing pursuant to the Supreme Court's decision in Hein v. Freedom From Religion Foundation, Inc., 127 S.Ct. 2553 (2007). According to Defendants, taxpayers may only challenge those exercises of congressional power which occur pursuant to the taxing and spending clause of Art. 1, § 8. Defendants argue that because Grayson County did not expend any of its funds and no taxpayer dollars were used in order to produce the Foundations Display, the Plaintiffs do not have taxpayer standing to bring this action. This argument fails because the Plaintiffs do not rely upon their status as taxpayers to bring this action, and therefore, do not have to satisfy the requirements for taxpayer standing set forth in Hein. See Hinrichs v. Speaker of House of Representatives of Indiana General Assembly, 506 F.3d 584, 590 n. 5 (7th Cir. 2007).

Finally, the Court finds that the ACLU has standing in this matter. An organization has standing to bring suit on behalf of its members when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt v. Washington State Apple Advertising Com'n, 432 U.S. 333, 343 (1977). The ACLU has organizational standing to sue because each of their identified members have standing, the interests the ACLU seeks to protect are consistent with the organization's purpose of "defending citizen's

9

constitutional rights," and neither the claim nor the relief requires the participation of individual members.  See Ashbrook, 375 F.3d at 490.  Accordingly, the Court finds that the ACLU has organizational standing to challenge the Foundations Display in this Court.

## B. Establishment Clause

The Establishment Clause of the First Amendment prohibits laws "respecting an establishment of religion." U.S. CONST. amend. I.  This prohibition is applicable to the States and local governments through the Fourteenth Amendment.  Abington School District v. Schempp, 374 U.S. 203 (1963).  Government actions challenged under the Establishment Clause are reviewed under the three-part test set forth in Lemon v. Kurtzman, 403 U.S. 602 (1971).  Under Lemon, the governmental action must (1) have a secular legislative purpose; (2)"its principal or primary effect must be one that neither advances nor inhibits religion;" and (3) the governmental action "must not foster 'an excessive government entanglement with religion.'"[4]  Lemon, 403 U.S. at 612-613 (citation omitted).  See also American Civil Liberties Union of Ohio v. Capitol Square Review and Advisory Board, 243 F.3d 289, 306 (6th Cir. 2001).  In the last decade the Supreme Court has "reformulated" the first and second prongs of the Lemon test.  Mercer County, 432 F.3d at 635.  "After McCreary County, the first is now the predominant purpose test."  Id. at 635 (citing McCreary County, 545 U.S. at 861).  "The second, the so-called 'endorsement' test, asks whether the government action has

---

[4]The Plaintiffs do not contend that the display fosters an excessive governmental entanglement with religion.  Instead, Plaintiffs arguments are confined to the first and second prong of the Lemon test.

the purpose or effect of endorsing religion." Id.  (citing Granzeier v. Middleton, 173 F.3d 568, 573 (6th Cir. 1999)).

### 1. Purpose

Under the first prong of the Lemon test, the question is whether Grayson County acted with "the ostensible and predominant purpose of advancing religion" in posting the Ten Commandments as a part of the Foundations Display.  McCreary County, 545 U.S. at 860. "The general rule when attempting to determine the purpose behind a governmental action is to consult and to defer to the stated purpose for the action." Indiana Civil Liberties Union, Inc. v. O'Bannon, 110 F. Supp. 2d 842, 849 (S.D. Ind. 2000), aff'd, 259 F.3d 766 (7th Cir. 2001)(citing Edwards v. Aguillard, 482 U.S. 578, 583 (1987)); McCreary County, 545 U.S. at 864.  However, "the secular purpose required has to be genuine, not a sham, and not merely secondary to a religious objective." McCreary County, 545 U.S. at 864; see also Coles v. Cleveland Board of Education, 171 F.3d 369, 384 (6th Cir. 1999).

"'[A] finding of impermissible purpose should be rare' and restricted to circumstances where the impermissible purpose 'emerges from readily discoverable facts.'" American Civil Liberties Union of Ohio Foundation, Inc. v. Board of Com'rs of Lucas County, Ohio, 444 F. Supp. 2d 805, 811 (N.D. Ohio 2006)(quoting Mercer County, 432 F.3d at 630)).  The purpose inquiry "is to be judged under 'an objective observer standard'" and "[t]he objective observer is presumed to be aware of the 'text, legislative history, and implementation' of the state action" or comparable official act.  Mercer County, 432 F.3d at 630; McCreary County, 545 U.S. at 862 (citing Edwards, 482 U.S. at 594-595 (recognizing that the court looks not

11

only to the historical context of the government action, but also "the specific sequence of events leading to [its] passage")).

In order to determine whether Plaintiffs have established that the display in question has the predominant purpose of advancing religion, a review of the controlling case law is helpful.

### *McCreary County, Kentucky v. American Civil Liberties Union*

The United States Supreme Court in <u>McCreary County, Kentucky v. American Civil Liberties Union of Kentucky</u>, 545 U.S. 844 (2005), affirmed the grant of a preliminary injunction enjoining a Foundations Display similar in all material respects to the Foundations Display at issue in the present case.  In <u>McCreary County</u>, two Kentucky counties originally posted stand alone copies of the Ten Commandments in their courthouses.  The McCreary County Fiscal Court ordered the display to be posted in a very high traffic area.  <u>Id.</u> at 851. "In Pulaski County, a similar display was erected in a ceremony presided over by the County Judge-Executive, who called the Ten Commandments 'good rules to live by' and noted that astronauts are convinced 'there must be a divine God' after viewing the Earth from the moon."  <u>American Civil Liberties Union v. Rowan County</u>, 513 F. Supp. 2d 889, 894 (E.D. Ky. 2007)(citing <u>McCreary County</u>, 545 U.S. at 851).  The Pulaski County Judge Executive was accompanied by his local pastor who also spoke at the ceremony.

The ACLU brought suit against both counties for alleged violations of the Establishment Clause.  <u>McCreary County</u>, 545 U.S. at 852.  Before a ruling by the district court, both counties enacted resolutions ordering that expanded displays be erected to replace

the stand alone displays.  The second display contained a large copy of the Ten Commandments surrounded by eight other documents in smaller frames.  The resolutions made several references to the Ten Commandments, Jesus Christ as the "Prince of Ethics," and provided that the Founding Fathers had an "explicit understanding of the duty of elected officials to publically acknowledge God as the source of America's strength and direction." Id. at 853-854.  The district court granted the motion for preliminary injunction.  The counties then erected a third display entitled "The Foundations of American Law and Government Display." Id. at 855.  The resolution authorizing the second display was not repealed, nor was a new resolution passed.  The district court expanded the injunction to include the third display.  The Sixth Circuit affirmed.  The United States Supreme Court examined all three displays and affirmed the grant of the preliminary injunction.

With respect to the original stand alone display, "the Supreme Court noted that a similar display rejected in Stone v. Graham, 449 U.S. 39 (1980), 'had no context that might have indicated an object beyond the religious character of the text, and the Counties' solo exhibit in McCreary County did nothing more to counter the sectarian implication than the posting at issue in Stone.'" Rowan County, 513 F. Supp. 2d at 896 (quoting McCreary County, 545 U.S. at 868).  In examining the second display, the Court found that the displays and the resolutions "presented an indisputable, and undisputed, showing of an impermissible purpose."  McCreary County, 545 U.S. at 870.  According to the Supreme Court, the additional documents "highlighted references to God as their sole common element." Id. The Supreme Court found that the "display's unstinting focus was on religious passages,

13

showing the Counties were posting the Commandments precisely because of their sectarian content." Id. at 870.

Finally, the Supreme Court found that the third displays also evidenced a religious purpose. Mercer County, 432 F.3d at 631. The Supreme Court held that the counties' new statements of purpose were presented only as a "litigating position." McCreary County, 545 U.S. at 871. The Supreme Court noted that the counties had never repealed the resolutions passed in connection with the second displays nor repudiated them in any way. Relying upon the context and history of all the displays, the Supreme Court concluded that "[n]o reasonable observer could swallow the claim that the Counties had cast off the objective so unmistakeable in the earlier displays." Id. at 872. Additionally, the Supreme Court noted that the selection of posted material did not "suggest a clear theme that might prevail over evidence of the continuing religious object." Id. In fact, the Supreme Court criticized the Foundations Display for its puzzling "choices and omissions," noting that "[i]f the observer had not thrown up his hands, he would probably suspect that the Counties were simply reaching for any way to keep a religious document on the walls of courthouses constitutionally required to embody religious neutrality." Id. at 873. Although finding the display unconstitutional, the Supreme Court stated that they did "not decide that the Counties' past actions forever taint any effort on their part to deal with the subject matter." Id. at 873-874.

*American Civil Liberties Union v. Mercer County*

Relying upon McCreary County, the Sixth Circuit in American Civil Liberties Union

of Kentucky v. Mercer County, 432 F.3d 624 (6th Cir. 2005), held a Foundations Display identical to both the third display at issue in McCreary County and the display at issue in the present case constitutional.   Considering the context of the display, "including the explanatory document and the eight other objectively historical and secular documents," the Sixth Circuit held that Mercer County's predominant purpose – to recognize American legal traditions – is secular and found no evidence that Mercer County's stated purpose was a sham.  Id. at 631-632.  The Mercer County display involved "one display, one authorizing measure, and one implementation, all of which demonstrate a secular purpose."  Id. at 631. "There were no prior unconstitutional displays in the county to taint the context and history,"[5] a county resident paid and hung the display himself, no ceremony solemnized by a clergyman was held, and the only stated purpose of the display was to recognize American legal standards.  American Civil Liberties Union v. McCreary County, 2007 WL 2903210, *4 (E.D. Ky. September 28, 2007); Mercer County, 432 F.3d at 631-632.  Contrasting the history of the single Mercer County display with the history of the multiple displays in McCreary County, the Sixth Circuit held that "[a] reasonable observer would not view this display as an attempt by Mercer County to establish religion."  Mercer County, 432 F.3d at 632.  Additionally, the Sixth Circuit rejected the Supreme Court's criticism of the content of the Foundations Display.  Specifically, the Sixth Circuit stated that "we are not persuaded

---

[5]The Sixth Circuit held that courts cannot consider the history of similar displays in other counties in assessing the purpose of a display.  "If the counties involved in *McCreary County* may purge themselves of the impermissible purpose, it follows *a fortiori* that Mercer County may act free of the *McCreary County*-taint."  Mercer County, 432 F.3d at 632 n. 6.

by comments indicating that the Supreme Court would have posted a different display.  We are called upon to analyze the documents actually displayed.  Having done so, we conclude that they do not have a religious purpose." Mercer County, 432 F.3d at 634 n. 7.

Based on these cases, Plaintiffs argue that the series of events surrounding the erection of the current Foundations Display reflects Grayson County's predominant purpose of endorsing religion.  Defendants disagree arguing that both the context and history of the Foundations Display support a secular purpose and demonstrate that the stated secular purpose is not a sham.

Initially, Plaintiffs rely on the deposition testimony of the Grayson County Fiscal Court members to support their position that the County's predominant purpose is religious.  Much of this testimony is "irrelevant and cannot be considered by the Court in determining the county's predominant purpose." Rowan County, 513 F. Supp. 2d at 902.  The Supreme Court in McCreary County cautioned that in scrutinizing purpose, the "understanding of official objective emerges from readily discoverable fact, without any judicial psychoanalysis of a drafter's heart of hearts." 545 U.S. at 862.  "The eyes that look to purpose belong to an 'objective observer,' one who takes account of the traditional external signs that show up in the 'text, legislative history, and implementation of the statute,' or comparable official act." Id.  The depositions of the Grayson County Fiscal Court members would not have been available to the objective observer.  The depositions involve post-litigation testimony and constitute personal views of the fiscal court members.  As noted by the district court in Rowan County,

16

> [e]ven if every member of the Fiscal Court personally and privately wanted to ensure that the Ten Commandments were placed on the walls of the courthouse for religious reasons, and later admitted as much, the Court would be required to ignore these personal views unless they were somehow made available to the 'objective observer' through some type of official act or when the individual was speaking in his or her official capacity.

513 F. Supp. 2d at 902.   The deposition testimony would not have been available to the objective observer, and therefore, will not be considered by this Court.

After analyzing the Foundations Display posted in the Grayson County Courthouse in light of the holdings set forth in McCreary County and Mercer County, the Court finds that the "readily discoverable facts" demonstrate that the Foundations Display at issue has a predominantly religious purpose.  Reverend Shartzer's public comments demonstrate that he had a clear religious purpose for requesting to erect the Foundations Display.  The September 18, 2001, minutes of the Grayson County Fiscal Court reflect that "Reverend Chester Shartzer addressed the Court concerning his desire for the County to place the Ten Commandments in the County buildings." (September 18, 2001 Fiscal Court Minutes at 1). Reverend Shartzer indicated that "there were several Counties in the State who ha[ve] them in their Courthouses." (Id.).  The minutes further reveal that Reverend Shartzer "explained that some Counties ha[ve] them hanging in a group of other historical documents.  He said he thought the Civil Liberties would look more favorable toward it if they were hanging in a grouping with the other historical documents." (Id.) Reverend Shartzer's public comments are a component of the legislative history and context which this Court must evaluate in determining the Defendants' predominant purpose of posting the Foundations Display.  See

17

American Civil Liberties Union of Kentucky v. Garrard County, Kentucky, 517 F. Supp.2d 925, 942 (E.D. Ky. 2007)(may consider "public comments of an enactment's sponsor" in deducing a county's purpose). An objective observer would understand that the Foundations Display's sponsor desired to post the Ten Commandments in the Courthouse for purely religious reasons and counseled the Grayson County Fiscal Court on how to accomplish this to avoid objection by the ACLU.

Significantly, the evidence also reflects that the Grayson County Fiscal Court never considered a secular purpose for the display. The only statement of purpose by Grayson County is contained in the affidavit of County Judge Executive Gary Logsdon submitted during the course of this litigation. According to Judge Logsdon, the purpose of the Foundations Display is "educational in nature, and is intended to reflect a sampling of documents that played a significant role in the development of the legal and governmental system of the United States." (Logsdon Aff. at ¶ 12.) Despite this articulated purpose, there is no evidence in the record to suggest that any Fiscal Court member ever considered such a rationale. There are no statements in the minutes of the Grayson County Fiscal Court's meetings suggesting this educational purpose. Additionally, there are no accompanying resolutions or other official proclamations of governmental purpose.

Instead, the September 18, 2001, minutes of the Grayson County Fiscal Court reflects that "Judge Logsdon and the Court members expressed the desire to place **them** [the Ten Commandments] in the County buildings and asked the County Attorney if he thought they could do so in a way that would not cause problems for the County." (September 18, 2001

18

Fiscal Court Meetings at 1.)  A reasonable observer could only conclude that Judge Logsdon and the remainder of the Fiscal Court members desired to place the Ten Commandments in the courthouse and wanted advice from the County Attorney on how to do this without being sued.  Immediately after this discussion, Magistrate Damon Hornback moved "to place the Ten Commandments in the buildings."  Magistrate Hornback's original motion demonstrates the understanding and true intent of the Fiscal Court members.

The fact that the original motion by Magistrate Hornback to post the Ten Commandments failed, and the Fiscal Court members instead voted to display the Ten Commandments in a display with other "historical documents" does not dispel the County's predominantly religious purpose.  On the contrary, the Fiscal Court continued to emphasize the public display of the Ten Commandments rather than any historical or educational purpose.  (September 18 and September 28, 2001, Meeting Minutes.)  The Fiscal Court at its September 18, 2001, meeting moved to place "the Ten Commandments in the Court House along with the Historical documents" which were then listed.  (Id. at 1.)  In a special session of the Grayson County Fiscal Court on September 28, 2001, the Fiscal Court again approved the placement of "the Historical Documents and the Ten Commandments . . . in a grouping in the Court House."  Furthermore, the minutes reflect that the Fiscal Court approved the Foundations Display, including the explanation document, without reviewing the "historical documents" and without verifying the accuracy or content of the display.  The continued identification of the Ten Commandments as a separate and distinct element apart from the other "historical documents" underscores the absence of a valid secular purpose by

19

the Fiscal Court.  See American Civil Liberties Union v. Garrard County, 517 F. Supp. 2d 925, 943 (E.D. Ky. 2007).

Given that the Grayson County Fiscal Court minutes in question do not provide any discussion by the Fiscal Court regarding an educational purpose, historical acknowledgment, or any other secular rationale for the Foundations Display, given the clear statements of religious purpose articulated by Reverend Shartzer, Judge Logsdon, and Magistrate Hornback in the minutes, and given the immediate approval of the display by the Grayson County Fiscal Court after these statements, a reasonable observer would conclude that the County's current statement of purpose articulated by Judge Logsdon is presented only as a "litigating position" and is a sham.  McCreary County, 545 U.S. at 871("[T]he secular purpose required has to be genuine, not a sham, and not merely secondary to a religious objective." Id. at 864).  For these reasons, the Court finds that the Foundations Display has the ostensible and predominant purpose of advancing religion and, therefore, violates the first prong of the Lemon test.

   *2. Effect*

Under the second prong of the Lemon test – the endorsement test, the question is whether "the government action has the purpose or effect of endorsing religion." Mercer County, 432 F.3d at 635.  "Under the endorsement test, the government violates the Establishment Clause when it acts in a manner that a reasonable person would view as an endorsement of religion." Id. at 636 (citing Granzeier, 173 F.3d at 573).  "This is an objective standard, similar to the judicially-created 'reasonable person' standard of tort law."

20

Id. (citing Ams. United for Separation of Church & State v. City of Grand Rapids, 980 F.2d 1538, 1543-44 (6th Cir. 1992) (en banc)).   In complying with this case law, the Court does "'not ask whether there is *any* person who could find an endorsement of religion, whether *some* people may be offended by the display, or whether *some* reasonable person might think [the government] endorses religion.'" Id. (quoting Ams. United for Separation of Church & State, 980 F.2d at 1544).   Instead, the inquiry "is whether *the* reasonable person *would* conclude that [Grayson] County's display has the effect of endorsing religion." Id.

The Sixth Circuit in Mercer County suggested that the content of Foundations Display is facially valid.  Mercer County, 432 F.3d at 637.[6]  In the Foundations Display, "the Ten Commandments are part of an otherwise secular exhibit." Id.  "'The Commandments are not displayed in larger text or otherwise more prominently than the other items in the display . . . .'" Id. (citation omitted).  According to the Sixth Circuit, "[w]hen placed on a level with other documents having such unquestioned civil, legal, and political influence, the Commandments' own historical significance becomes more pronounced." Id. at 637-638.  Therefore, based upon the holding in Mercer County, the Foundations Display on its face does not have the primary effect of endorsing religion.  See, e.g., Rowan County, 513 F. Supp. 2d at 905.

_____

[6] Originally, based on prior Circuit precedent, this Court found that the Foundations Display had the effect of endorsing religion due to the content and the location of the display. However, the Sixth Circuit in Mercer has since found the content of the Foundations Display constitutional. Mercer County, 432 F.3d at 637.  But see, contra, American Civil Liberties Union of Kentucky v. Mercer County, 446 F.3d 651, 653 (6th Cir. 2006)(Cole, J. dissenting from the denial of rehearing en banc).

However, given the history and context of the Foundations Display discussed above, the Court finds that a reasonable person would conclude that the current Foundations Display erected at the Grayson County Courthouse has the effect of endorsing religion, and therefore violates the second prong of the <u>Lemon</u> test as well.

## IV.  PERMANENT INJUNCTION

Defendants argue that even if Plaintiffs prevail on the merits, the requested relief of a permanent injunction is overly broad, inappropriate, and if granted, will harm the Defendants.  Defendants urge the Court to decline to issue a permanent injunction as did the district courts in <u>American Civil Liberties Union v. Rutherford County, Tenn.</u>, 2006 WL 2645198 (M.D. Tenn. September 14, 2006) and <u>American Civil Liberties Union v. McCreary County, Ky.</u>, 2007 WL 2903210 (E.D. Ky. September 28, 2007).

The Court has reviewed these opinions and finds that a permanent injunction "narrowly tailored to give only the relief to which plaintiffs are entitled" is appropriate. <u>Rutherford County</u>, 2006 WL 2645198, *11 (quoting <u>Sharpe v. Cureton</u>, 319 F.3d 259, 273 (6th Cir. 2003)).  Given the unconstitutional history and context that accompanied the display in question, the Court will enter an injunction permanently enjoining the Defendants, Grayson County, Kentucky, and Gary Logsdon, in his official capacity as Grayson County Judge Executive, from displaying the Ten Commandments as part of the Foundations of American Law and Government Display in the Grayson County Courthouse as a result of the action taken by the Grayson County Fiscal Court on September 18 and September 28, 2001.

22

## V.  CONCLUSION

For the reasons set forth above, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** that the motion by Plaintiffs for summary judgment [DN 45]

is **GRANTED** and the motion by Defendants for summary judgment [DN 43] is **DENIED**.

**IT IS FURTHER ORDERED** that the Defendants, Grayson County, Kentucky, and

Gary Logsdon, in his official capacity as Grayson County Judge Executive, are permanently

enjoined from displaying the Ten Commandments as part of the current Foundations of

American Law and Government Display in the Grayson County Courthouse as a result of the

action taken by the Grayson County Fiscal Court on September 18 and September 28, 2001.

This permanent injunction pertains only to the facts presented in this action and does not

otherwise prohibit Grayson County from future constitutional displays.  A judgment will be

entered consistent with this Opinion.

Joseph H. McKinley, Jr., Judge
United States District Court

March 27, 2008

cc: counsel of record

23