UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO.: 4:01CV-202-M

AMERICAN CIVIL LIBERTIES UNION
OF KENTUCKY, INC., et al.                                                    PLAINTIFFS

v.

GRAYSON COUNTY, KENTUCKY; and
GARY LOGSDON, in his official capacity
as Grayson County Judge Executive                                    DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court upon a motion by the Plaintiffs, American Civil Liberties

Union of Kentucky, Inc., Raymond Harper, and Ed Meredith, for attorney fees [DN 64].  Fully

briefed, this matter is ripe for consideration.

I. BACKGROUND

The Plaintiffs filed this action in 2001 under 42 U.S.C. § 1983 seeking a declaration that a

display located in the Grayson County Courthouse, composed of various documents including the

Ten Commandments, violated the Establishment Clause of the First Amendment.  The Plaintiffs also

sought a preliminary and permanent injunction to enjoin the continued display of the document.

This Court granted a preliminary injunction in 2002 and stayed the case pending the resolution of

the appeal in <u>McCreary County v. ACLU of Ky.</u>, 545 U.S. 844 (2005).  Upon resolution of

<u>McCreary County</u>, the stay was lifted and discovery commenced whereupon depositions were taken

of seven individuals.  After the close of discovery the Plaintiffs and Defendants filed cross-motions

for summary judgment.  Earlier this year, the Court granted the Plaintiffs' motion, denied the

Defendants' motion, and issued a permanent injunction enjoining the Defendants from continuing

to display the Ten Commandments in a manner that violated the First Amendment.  The Plaintiffs

argue that since they were the prevailing parties in their § 1983 claim, they are entitled to attorney

fees and costs in accordance with § 1988.[1]

## II. DISCUSSION

The attorneys for the Plaintiffs, David Friedman[2] and William Sharp,[3] argue that they are

entitled to $44,208.00 in fees and $3,252.07 in litigation costs associated with this claim.  In his

declaration, Mr. Friedman stated that he kept contemporaneous time records associated with this

claim.  Mr. Friedman submitted the time records to the court which identify 101.4 hours in which

Mr. Friedman was involved with this case.  The Plaintiffs request that they be awarded fees at the

rate of $300 per hour for Mr. Friedman's services.  Mr. Friedman's records also identify costs

totaling $3,252.07.  In Mr. Sharp's declaration, he indicated that he also kept contemporaneous time

records.  These records, which were submitted to the court, identify 76.6 hours in which Mr. Sharp

was involved with this case.  The Plaintiffs request that they be awarded fees for Mr. Sharp's

services at the rate of $180 per hour.  In support of their fee request, the Plaintiffs submitted a

declaration of David Tachau, a practicing attorney in Louisville, who asserts that he is familiar with

the fees charged by experienced litigators in civil rights matters.  He indicates that $300 per hour

is well within the range of fees charged by lawyers with 31 years of federal litigation experience in

the Western District of Kentucky.  He also indicates that $180 per hour is well within the range of

---

[1]      42 U.S.C. § 1988(b) provides in pertinent part: "[i]n any action or proceeding to enforce a provision of section[] . . . 1983 . . ., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ."

[2]      Mr. Friedman has served as volunteer general counsel to the ACLU since 1984 and has otherwise been licensed to practice law since 1977.  Mr. Friedman's private practice is also concentrated in the area of civil rights and liberties litigation.

[3]      Mr. Sharp has served as ACLU's staff attorney since May, 2007 and has otherwise been licensed to practice law since 1999.

fees charged by lawyers with eight years of federal litigation experience in the Western District of Kentucky.

The Defendants respond by arguing that the Plaintiffs have failed to show that the rates requested by their attorneys and the number of hours spent litigating the matter are reasonable. They request that Mr. Friedman's fees be reduced to $240 per hour and that Mr. Sharp's fees be reduced to $150 per hour. They also argue that because some of the work conducted by the Plaintiffs' attorneys was duplicative and the amount of time spent on certain tasks was unreasonable, their fee request should be reduced to reflect a more reasonable number.[4] The Defendants also assert that there are special circumstances which would render an award of fees unjust. According to the Defendants, these special circumstances include the size and modest resources of Grayson County and the Defendants' good faith conduct. Finally, the Defendants argue that because the Plaintiffs did not file a bill of costs in this matter, they should not be permitted to recover costs above and beyond travel expenses and meals. Upon consideration of these issues, the Defendants believe that the Plaintiffs should recover no more than $26,702.07 in fees and costs.

### A. Attorney Fees

A party that prevails in their § 1983 litigation "is entitled to recover his or her reasonable attorney fees." Wayne v. Village of Sebring, 36 F.3d 517, 531 (6th Cir. 1994) (citing Hensley v. Eckerhart, 461 U.S. 424 (1983)). Therefore, "a court must first determine whether the petitioning

---

[4] Specifically, the Defendants argue that 67 hours spent on the motions for summary judgment between both attorneys was unreasonable and should be reduced to a total of 41 hours. They also argue that the attendance by both attorneys at the depositions in this matter was duplicative and Mr. Sharp should not be permitted to recover a fee for such depositions. The Defendants also argue that the travel time requested in the Plaintiffs motion should be reduced in half.

plaintiff was the prevailing party." Id. This requirement is satisfied if "the plaintiff has succeeded

on any significant issue in litigation which achieve[d] some of the benefit the parties sought in

bringing suit . . . ." DiLaura v. Twp. of Ann Arbor, 471 F.3d 666, 670 (6th Cir. 2006) (quotations

omitted).  If the Court determines that the petitioning plaintiff is the prevailing party, it must then

determine whether the fee request is reasonable.  Wayne, 36 F.3d at 531.  In Wayne, the Sixth

Circuit set forth the appropriate method for determining the reasonableness of a fee request:

> A starting point is to calculate the number of hours reasonably expended on the
> litigation multiplied by a reasonable hourly rate.  (This is known as the "lodestar"
> calculation.)  The court should then exclude excessive, redundant, or otherwise
> unnecessary hours.  Next, the resulting sum should be adjusted to reflect the result
> obtained.  This involves two questions: First, did the plaintiff fail to prevail on claims
> that were unrelated to the claims on which he succeeded?  Second, did the plaintiff
> achieve a level of success that makes the hours reasonably expended a satisfactory
> basis for making a fee award?

Id. (quotations and internal citations omitted).

The Defendants do not dispute that the Plaintiffs were a prevailing party in this litigation.

They requested and were granted both a preliminary and permanent injunction.  They requested and

were awarded a declaration that the display in question violated the First Amendment.  Therefore,

the only issue that needs to be resolved is whether the Plaintiffs' fee request was reasonable.

### 1.  Number of Hours

The Defendants contend that 67 hours spent between Mr. Friedman and Mr. Sharp on matters

related to summary judgment was excessive.  The Court disagrees.  In determining whether the

number of hours spent on a matter is excessive, the Court must determine "whether the lawyer used

poor judgment in spending too many hours on some part of the case or by unnecessarily duplicating

the work of co-counsel."  Coulter v. Tennessee, 805 F.2d 146, 151 (6th Cir. 1986).

The Defendants do not dispute that Mr. Friedman and Mr. Sharp actually spent 67 hours on

4

matters related to summary judgment.  The 67 hours at issue include not only time spent submitting their own motion and reply for summary judgment, but also time spent responding to the Defendants' cross-motion for summary judgment.  In their response, the Plaintiffs not only had to address the merits of the case, but they also had to resist the Defendants' argument that the Plaintiffs lacked standing to bring the suit.  As the Defendants submitted a motion for summary judgment and also raised an additional argument regarding standing, it is difficult to understand how they can now complain about the time spent by the Plaintiffs to address those arguments.  See City of Riverside v. Rivera, 477 U.S. 561, 580 n.11 (1986) ("The government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.") (citation omitted). It is apparent from the time records that the attorneys performed legal research, prepared various drafts of the briefs, and edited and revised those briefs.  These are the types of practices which usually occur before filing a dispositive motion.  See, e.g., Lenihan v. City of New York., 640 F. Supp. 822, 825 (S.D.N.Y. 1986) ("It is normal practice for attorneys to revise briefs several times before submitting them to the Court.").  Under these circumstances, it was not improper "billing judgment" for the Plaintiffs to request fees related to the 67 hours spent on matters related to summary judgment; those hours were not "excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 434 (indicating that "[i]n the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority.") (citation omitted).

The Court finds that the 101.4 hours that Mr. Friedman spent litigating this matter and the 76.6 hours that Mr. Sharp spent litigating this matter to be reasonable.

### 2. *Duplication of Services*

It is also the Defendants' contention that the presence of both Mr. Friedman and Mr. Sharp at the depositions in this matter was unnecessary and therefore duplicative.  One factor the Court should "examine in determining the reasonableness of hours expended is the potential duplication of services."  Ramos v. Lamm, 713 F.2d 546, 554 (10th Cir. 1983).  If multiple attorneys were present at a deposition, but only one was needed, "compensation should be denied for the excess time."  Id.  Therefore, "the presence of more than one lawyer at depositions . . . must be justified to the court."  Id. n.4.  If an attorney is at the proceeding "for the purpose of being trained" or if the attorney "do[es] not participate in or contribute to the proceedings" then the fee request for those hours will be denied.  Id.  However, "division of responsibility may make it necessary for more than one attorney to attend activities such as depositions and hearings.  Multiple attorneys may be essential for planning strategy, eliciting testimony or evaluating facts or law."  Williamsburg Fair Hous. Comm. v. Ross-Rodney Hous. Corp., 599 F. Supp. 509, 518 (S.D.N.Y. 1984) (citation omitted).

Here, both attorneys were present for the purposes of dividing responsibility.  (See Reply Mem. in Supp. of Pls.' Mot. for Award of Att'y Fees (hereinafter "Reply") [DN 82] at p. 7-8.)  Seven depositions took place over three days and it was necessary for both attorneys to be present.  (Id.)  Mr. Sharp deposed four witnesses and Mr. Friedman deposed three.  (Id.)  Neither of the attorneys attended the depositions for the purpose of being trained nor did they sit idly by without contributing.  While one of the attorneys was deposing a witness, the other was engaged in a factual investigation and conferred with their clients.  (Id. at 8.)  Furthermore, the factual information gleaned in the depositions would assist the attorneys in later developing an argument for their legal

6

briefs. Therefore, the presence of both attorneys at the depositions was not unnecessarily duplicative.

### 3.  *Travel Time*

The Defendants assert that the Plaintiffs' attorneys should not be able to recover their full hourly rate for their travel time. Whether a party should be awarded fees for travel time at the usual hourly rate is "within the discretion given the district court, which has greater familiarity with local practice . . . ." Perotti v. Seiter, 935 F.2d 761, 764 (6th Cir. 1991). Here, Mr. Friedman and Mr. Sharp represent that they traveled together. (Reply at p. 8.) They also represent that "they spent nearly all of their travel time discussing factual development, case strategy, witness testimony and the structure of legal arguments in support of summary judgment." (Id.) It is customary local practice that if productive legal work is performed during travel, such travel time is billed at the attorney's full hourly rate. As legal work was performed by Mr. Friedman and Mr. Sharp while they traveled, there is no reason that the attorneys should not be compensated at their full hourly rate as long as that rate is reasonable.

### 3.  *Reasonable Rate*

The Defendants argue that the hourly rates requested for Mr. Friedman and Mr. Sharp's services are not reasonable. A reasonable fee is "one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." Adcock-Ladd v. Sec'y of Tresury, 227 F.3d 343, 349 (6th Cir. 2000) (citing Reed v. Rhodes, 179 F.3d 453, 471 (6th Cir. 1999)). To determine a reasonable fee the court "should initially assess the '*prevailing market rate in the relevant community*.'" Id. at 350 (emphasis in original) (quoting Blum v. Stenson, 465 U.S. 886, 895 (1984)). The prevailing market rate "is that rate which lawyers of comparable skill and

experience can reasonably expect to command within the venue of the court of record . . . ."  Id. (citing Hudson v. Reno, 130 F.3d 1193, 1208 (6th Cir. 1997)).  The relevant community is "the legal community within that court's territorial jurisdiction . . . ."  Id.

Here, the Plaintiffs have sought to establish the market rate by submitting the declaration of Mr. Tachau.  Mr. Tachau asserts that he has practiced law in the Western District of Kentucky since 1982 and that he is familiar with the fees charged by experienced federal litigators handling civil rights litigation matters.  (See Tachau's Decl. ¶¶ 2-3.)  Mr. Tachau contends that the hourly rates requested by the Plaintiffs for the services of their attorneys are "well within the range of fees charged" by similar attorneys.  (See id. ¶ 4.)  The introduction of affidavits by practicing attorneys is one way a party can establish the market rate.  See Akron Ctr. for Reprod. Health v. City of Akron, 604 F. Supp. 1275, 1288-89 (N.D. Ohio 1985) (relying upon affidavits of attorneys in the community to assist in determining the market rate).  The Defendants attack Mr. Tachau's affidvait because Mr. Tachau does not state his own billing rate.  However, there is no authority "which suggests that a party seeking attorneys fees under § 1988 must rely exclusively on the statements of attorneys who charge exactly the same fee requested by that party."  Johnson v. City of Clarksville, 256 Fed. Appx. 782, 784 n.2 (6th Cir. 2007).  The Defendants also challenge the requested fee because Mr. Sharp does not indicate what his normal billing rate is.  However, "[t]he key factor in determining whether the rate sought is reasonable is the market rate for such representation."  Ibarra v. Barrett, No. 3:05-0971, 2008 WL 2414800, at *2 (M.D. Tenn. June 12, 2008) (citing Blum, 465 U.S. at 895).  In addressing a similar contention, the Middle District of Tennessee stated:

> The defendant cites no support for his contention that a reasonable rate must be determined by reference to the rate that the plaintiff's attorneys receive from clients.

> To the extent that the plaintiff's attorneys are engaged in a civil rights practice, it may well be that many of their clients do not have the means to pay a market rate for their work, and that the attorneys rely on Section 1988 and similar statutes for a bulk of their fees. To limit this analysis by considering only the rate the plaintiff's attorneys charge clients directly is both an inaccurate representation of the market value of their services and inconsistent with the purpose of Section 1988.

Id. (internal citation omitted). Here, Mr. Sharp does not collect an hourly fee from clients, but rather, he works for a non-profit organization that typically relies upon § 1988 for the source of its fees. (See Reply at p. 5.)

The Court may also rely upon its own familiarity with the rates charged by attorneys in the community in order to determine whether a fee request is reasonable. See Akron Ctr., 604 F. Supp. at 1288. The Court agrees with the Plaintiffs and the declaration of Mr. Tachau. Mr. Friedman has practiced law for approximately 31 years and for most of those years he has focused his practice on the area of civil rights and liberties. The Court finds that $300 per hour for a lawyer with Mr. Friedman's background and experience is reasonable. Mr. Sharp, although less experienced than Mr. Friedman, has practiced law in Kentucky for approximately eight years. The Court finds that $180 per hour for a lawyer with Mr. Sharp's background and experience is reasonable.

### 4. Lodestar and Other Factors

Based on the above determinations, the following table reflects the "lodestar" figure:

| Name | Hours Claimed | Hourly Rate | Lodestar Figure |
|------|---------------|-------------|-----------------|
| Friedman | 101.4 | $300 | $30,420 |
| Sharp | 76.6 | $180 | $13,788 |
| Total | | | $44,208 |

There is "[a] strong presumption that the lodestar figure . . . represents a 'reasonable' fee . . . ." Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986).

Although the Court may modify the lodestar amount under certain circumstances,[5] "modifications to the lodestar are proper only in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts." Adcock-Ladd, 227 F.3d at 350 (quotation omitted). The Defendants, however, have not introduced specific evidence which would warrant adjusting the lodestar fee.

The Defendants do, however, argue that the "lodestar" figure should be reduced because of special circumstances. Generally, "a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Hensley, 461 U.S. at 429. The Defendants first argue that Grayson County is a small governmental entity with modest financial resources. However, the fact that a governmental entity may have difficulty paying for an award of attorney fees is not a special circumstance. See Layman Lessons, Inc. v. City of Millersville, Tenn., 550 F. Supp. 2d 754, 757 (M.D. Tenn. 2008) (citation omitted). Second, the Defendants argue that Grayson County acted in good faith when erecting the display that contained the Ten Commandments. "However, good faith is not a 'special circumstance' which justifies the denial of attorney's fees under section 1988." Morscott, Inc. v. City of Cleveland, 936 F.2d 271, 273 (6th Cir. 1991).

Because there are no factors which warrant the adjustment to the lodestar figure and because

_____

[5]       In determining whether to modify the lodestar fee, the Court looks to twelve factors: "(1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Adcock-Ladd, 227 F.3d at 349 n.8 (quotation omitted) (listing factors from Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).

there are no special circumstances which would render an award of attorney fees unjust, the Plaintiffs are entitled to an award of attorney fees in the amount of $44,208.

## B.  Costs

The Defendants argue that the Plaintiffs are not entitled to an award of costs solely on grounds that the Plaintiffs failed to timely file a bill of costs in accordance with 28 U.S.C. § 1920. The Defendants argument is without merit because the Plaintiffs are seeking an award of costs as part of attorney fees pursuant to 42 U.S.C. § 1988.  See Northcross v. Bd. of Educ., 611 F.2d 624, 639 (6th Cir. 1979) ("The authority granted in section 1988 to award a 'reasonable attorney's fee' included the authority to award those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services. Reasonable photocopying, paralegal expenses, and travel and telephone costs are thus recoverable pursuant to the statutory authority of § 1988.").  As the Defendant does not challenge any particular expense and as all of the expenses appear to be those that would be billed to fee-paying clients, the Plaintiffs are entitled to a full award of costs in the amount of $3,252.07.

## III.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the Plaintiffs' motion for attorney fees and costs [DN 64] is **GRANTED**.  The Plaintiffs are entitled to an award of fees in the amount of $44,208 and an award of costs in the amount of $3,252.07.

cc:      Counsel of Record

11